**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COLORADO**

Civil Action No. 20-cv-01590-MEH

KIMBERLY JAJACK,

Plaintiff.

v.

NEW YORK LIFE INSURANCE
COMPANY,

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS AND COMPEL ARBITRATION**

---

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitrations Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Defendant New York Life Insurance Company (hereinafter "Defendant"), by and through undersigned counsel, hereby moves the Court to dismiss Plaintiff's claims, or alternatively, stay proceedings, and compel arbitration of Plaintiff's claims against Defendant. In support thereof, the Defendant states as follows:

## COMPLIANCE WITH LOCAL RULE 7.1(A)

Pursuant to D.C.COLO.LCivR 7.1(a), counsel for the Defendant conferred with Plaintiff the relief requested in this motion. Plaintiff does oppose the relief requested herein.

## INTRODUCTION

Plaintiff Kimberly JaJack asserts multiple claims against Defendant New York Life Insurance Company ("NYLIC" or the "Company") alleging racial discrimination, age discrimination, sex discrimination, retaliation, and several other claims under federal and state law.

In connection with her relationship with the Defendant and its affiliates, Plaintiff executed multiple agreements that established her obligation to arbitrate any disputes with Defendant. NYLIC offers securities through NYLIFE Securities, LLC, a wholly-owned subsidiary, which is a broker-dealer or member of the Financial Industry Regulatory Authority ("FINRA"). Ms. JaJack is obligated to arbitrate her claims before FINRA because she signed a Training Allowance Subsidy Agreement (Form N-9) with NYLIC that requires arbitration of all claims against Defendant. Ms. JaJack also signed a Representative Agreement, U4, and Form 3080 that all bind her to arbitration. Ms. JaJack is an educated professional with the knowledge and experience to understand the documents she signed. As discussed below, the Court should compel Ms. JaJack to arbitrate her claims and dismiss or stay any proceedings in this Court pending the completion of the arbitration.

## STATEMENT OF FACTS

Ms. JaJack began her affiliation with New York Life as a qualified insurance agent in the company's Colorado General Office in 2018. *See* Complaint ¶ 2, p. 20. On or about January 1, 2018, Ms. JaJack agreed to the terms of the Training Allowance Subsidy ("TAS") Agreement and the N-9 Agreement with NYLIC. As it pertains to arbitration, both are substantially similar. The Form N-9 arbitration agreement follows:

> 24. Arbitration.
>
> a. The Agent and New York Life (which includes New York Life, NYLIFE Securities LLC and their affiliates, successors, employees and agents) agree that any dispute, claim, request for equitable relief, or controversy arising between them, including but not limited to those alleging wrongful or unlawful discharge or employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation, common law or rule (hereinafter "the Claim"), as well as any

dispute as to whether such Claim is arbitrable, shall be resolved by a final and binding arbitration proceeding administered by the Financial Industry Regulatory Authority ("FINRA") in accordance with its applicable arbitration rules ("FINRA's arbitration rules") then in effect. These rules may be found at www.finra.org.

b. The following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect: (1) claims for workers' compensation benefits (except for claims of retaliation or discrimination), unemployment insurance, or state or federal disability insurance; (2) claims for benefits or breach of fiduciary duty arising under or relating to a plan that is governed by the Employee Retirement Income Security Act of 1972 ("ERISA"); (3) matters within the jurisdiction of the National Labor Relations Board; and (4) any other dispute or claim that has been excluded from arbitration by applicable law that is not preempted by the Federal Arbitration Act.

c. In the event that a claim is not arbitrable under FINRA'S arbitration rules, or FINRA refuses to arbitrate the Claim, the Agent and New York Life agree that the Claim, as well as any dispute as to whether such Claim is arbitrable, shall be resolved by a sole arbitrator in a final and binding arbitration proceeding administered by the American Arbitration Association (hereinafter "AAA") in accordance with its rules for the resolution of employment disputes then in effect. These rules may be found at www.adr.org.

d. The Agent and New York Life both agree to waive any right to a jury trial with respect to any Claim covered by this Agreement.

e. The Agent and New York Life agree that no claim may be initiated or maintained on a class action, collective action or representative action basis either in court or arbitration. All Claims must be brought in a party's individual capacity, and not as a plaintiff or class representative or member or otherwise on behalf of others in any purported class, collective, or representative proceeding. The Agent and New York Life further agree that if, for any reason, the waiver of any ability to initiate or maintain a claim as a class,

collective or representative action is found to be unenforceable or invalid, then any such class, collective or representative action or claim shall be litigated and decided in a court of competent jurisdiction, and not in arbitration. Any issue concerning the enforceability or validity of the waiver must be decided by a court, and not by an arbitrator.

f. Claims may not be joined or consolidated in arbitration with claims brought by other individuals, and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties. The parties agree that in the arbitration of any claims between them, the arbitrator will be required to resolve the dispute based the applicable law and the facts presented as a matter of record. Neither party will request, nor will the arbitrator be permitted, to treat as binding or preclusive any decision or ruling by a different arbitrator resulting from a dispute between New York Life and any other Agent or person.

g. Exclusive of Claims alleging employment discrimination including employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation or rule, or any other claims as to which New York Life is required under applicable law to bear the costs and expenses of the arbitrator(s) and/or any other type of cost or expense that the Agent would not be required to bear if the claims were brought in court, the costs and expenses of the arbitrator or arbitrators for any arbitration shall, to the extent permitted by FINRA or AAA's rules, be split evenly between the Agent and New York Life.

h. Nothing in this Agreement should be interpreted as restricting or prohibiting the Agent from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation. Any dispute or claim that is covered by this Agreement but not resolved through the federal, state, or local agency proceedings must be submitted to arbitration in accordance with this Agreement.

Exhibit A, TAS Agreement, Form N-9.

Additionally, on or about August 24, 2019, Ms. JaJack signed a Registered Representative Agreement (the "Representative's Agreement"), see Exhibit B. The Representative's Agreement contained a broad acknowledgment that all disputes between the parties must be arbitrated:

> The Agent and New York Life agree that any dispute, claim, request for equitable relief, or controversy arising between them, including but not limited to those alleging wrongful or unlawful discharge, or employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation, common law or rule (hereinafter "the claim"), as well as any dispute as to whether such Claim is arbitrable, shall be resolved by a final and binding arbitration proceeding administered by the Financial Industry Regulatory Authority ("FINRA") in accordance with its applicable arbitration rules ("FINRA's arbitration rules") then in effect. These rules may be found at www.finra.org.

*See id.* at ¶ 9(a). Plaintiff also signed a FINRA U4 Disclosure statement on February 22, 2019, which required that she arbitrate any claim or controversy arising between she and her firm:

> You are agreeing to arbitration any dispute, claim, or controversy that may arise between you and your firm or a customer, or any other person that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which the claim is filed.

Exhibit C (U4 Disclosure). The U4 Disclosure states that a claim alleging employment discrimination may be arbitrated through FINRA only if the parties agreed to arbitrate it, either before or after the claim arose. Exhibit C, ¶ 2. Here, as stated in the From N-9, the parties did in fact agree to arbitrate all claims, including employment discrimination claims. Exhibit A.

Additionally, Plaintiff signed the Form U4 Arbitration Disclosure (FORM 3080) that ensured that Plaintiff understood that she agreed to an arbitration provision in the FORM U4 DISCLOSURE:

> The Form U4 contains a predispute arbitration clause. It is in item 5 of Section 15A of the Form U4. You should read that clause now. Before signing the U4 you should understand the following:
>
> (1) You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to trail by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

Exhibit D, FORM U4 ARBITRATION DISCLOSURE (FORM 3080).

On June 2, 2020, Plaintiff filed a Complaint against New York Life Insurance Company arising out of her employment with New York Life, alleging race discrimination, age discrimination, sex discrimination, retaliation and several other employment related claims under federal and state law. The many agreements Plaintiff knowingly signed clearly require that she arbitrate these claims.

## <u>ARGUMENT</u>

### I. The Court Should Dismiss Plaintiff's Claims.

Rule 12(b)(1) requires dismissal of a case where the court lacks subject matter jurisdiction. Where the parties are subject to a mandatory arbitration provision, "the district court lacks subject matter jurisdiction over the same dispute." *Hagerman v. United Transportation Union*, 281 F.3d 1189, 1195 (10th Cir. 2002). If the court finds the existence of a valid and enforceable arbitration clause, dismissal of claims is appropriate under Rule 12(b)(1). *See Encore Productions, Inc. v. Promise Keepers*, 53 F.Supp.2d 1101, 1111 (D.Colo. 1999) (dismissing claims under Rule

12(b)(1) due to arbitration clause); *Morrison v. Colorado Permanente Medical Group, P.C.*, 983 F. Supp. 937, 947 (same).

In considering a Rule 12(b)(1) motion, the district court may consider affidavits and exhibits submitted by the parties, including the TAS Agreement, the N-9 Agreement, the Representative Agreement, the U4 Disclosure, and the Form 3080, attached hereto. *Morrison*, 983 F. Supp. 2d at 939 (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995); *Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.1987)). As the party asserting jurisdiction, the burden is on Plaintiff to establish the court's subject matter jurisdiction over this dispute. *Id.* (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)).

Federal courts hold a strong presumption in favor of arbitrability, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Armijo v. Prudential Insurance Co. of America*, 72 F.3d 793, 797 (10th Cir. 1995) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1984)). Where a broad arbitration clause is in place, "in the absence of any express provision excluding a particular grievance from arbitration," the agreement to arbitrate must be enforced unless the opposing party can positively demonstrate that there is no interpretation of the agreement that would cover the claims at issue. *Local 5-857 Paper, Allied-Industrial, Chemical and Energy Workers Intern. Union v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003) (quoting *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986)).

Here, Ms. JaJack signed multiple agreements to arbitrate any and all disputes she might have with Defendant. She signed these agreements knowingly. The TAS and N-9 Agreements encompass all employment disputes, including claims of discrimination and harassment. Thus, this

Court does not have subject matter jurisdiction over Ms. JaJack's claims and should dismiss this case. If the Court elects not to dismiss this case it should stay proceedings pending the outcome of binding arbitration. The FAA expressly allows for a stay of all claims pending arbitration. *Exhibit 1-A* § I.J.; 9 U.S.C. § 3; *see, e.g., McWilliams v. Logicon, Inc.*, 143 F.3d 573 (10th Cir. 1998) (finding claims arbitrable under FAA and upholding district court's stay of proceedings pending arbitration).

## II. The Issue of Arbitrability Must Be Decided in Arbitration, Per the Express Terms of the Representative's Agreement.

To the extent there is any question as to whether Ms. JaJack's claims are indeed arbitrable, the TAS and N-9 Agreements direct an arbitration proceeding to answer that question—not a judicial one. *See* Ex. A at ¶ 24(a) ("[A]ny dispute … as to whether such Claim is arbitrable, shall be resolved by an arbitration proceeding … ."). As held by the Supreme Court, this agreement controls. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."). No discretion exists to decide otherwise.

> We must interpret the Act as written, and the Act in turn requires that we interpret the contract as written. When the parties contract delegates the arbitrability question to an arbitrator, a court may not override the contract. **In those circumstances, a court possesses no power to decide the arbitrability issue.** That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Id.* at 529 (emphasis added). Accordingly, if Ms. JaJack challenges the enforceability of her prior agreement to arbitrate disputes with New York Life, the dispute should be sent to arbitration for resolution by an arbitrator or a panel of arbitrators to be selected under the FINRA arbitration rules.

## III. The Arbitration Agreement is Enforceable.

Whether an arbitration agreement is enforceable is generally a matter of state law. *Weller v. HSBC Mortgage Servs., Inc.*, 971 F. Supp. 2d 1072, 1077 (D. Colo. 2013). In Colorado, the interpretation of a contract is a question of law for the court, and a court's duty is "to interpret a contract in a manner that effectuates the manifest intention of the parties at the time the contract was signed." *Randall & Blake v. Metro Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003). "If the language is plain, clear, and unambiguous, a contract must be enforced as written." *Id.* Here, the written agreement is plain, clear, and unambiguous. The arbitration clause in the TAS and N-9 Agreements mandate arbitration of "that any dispute, claim, request for equitable relief, or controversy arising between them, including but not limited to those alleging wrongful or unlawful discharge or employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation, common law or rule." *See* Ex. A at ¶ 24(a). These terms cover Ms. JaJack's current dispute with New York Life, which encompasses allegations of race, sex and age discrimination. Such broad language gives rise to a presumption of arbitrability. *See Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005). And, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Drews Distrib., Inc.*, 245 F.3d at 349 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

## IV. Under the FAA, the Court Must Enforce the Arbitration Clause in The Registered Representative Agreement.

The FAA leaves no place for the exercise of discretion, but, instead, directs district courts to order the parties to proceed to arbitration on all issues covered by an arbitration agreement. *see Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349-50 (4th Cir. 2001) (internal

quotations omitted) ("[a] court should not deny a request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). Thus, under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate the specific matter that caused the dispute. *Id.* §§ 2, 3.

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA in response to widespread judicial hostility to arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "This text reflects the overarching principle that arbitration is a matter of contract." *Am. Exp. Co. v. Italian Colors Rest.*, 570 US 228, 233 (2013).

Once a party moves to compel arbitration,[1] the district court must: "[H]ear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Although the Tenth Circuit has not addressed this issue directly, it has suggested that a district court may dismiss when a party specifically requests dismissal rather than a stay. *Hickey v. Brinker Int'l Payroll Co., L.P.*, 2014

---

[1] Section 3 of the FAA (9 U.S.C. § 3), provides that:

> [I]if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

U.S. Dist. LEXIS 20387 * 15 (D. Colo. Feb. 18, 2014) ("Despite the seemingly mandatory language of section 3, the majority of federal courts hold that a case may be dismissed, rather than stayed, when all claims therein are arbitrable") (citations omitted); *see also Elliott v. Essex Motors, LLC*, 12-cv-01078-REB-KLM, 2013 U.S. Dist. LEXIS 46203, at *8, n.4 (D. Colo. Mar. 18, 2013) (finding defendant could request dismissal) (citing *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793. 796–97 (10th Cir. 1995).[2] Accordingly, this Court should dismiss this case and compel arbitration.

## CONCLUSION

For the reasons stated herein, Plaintiff's arbitration agreements apply to all claims against the Defendant, this Court does not have jurisdiction to hear those claims and Defendant respectfully requests the Court dismiss this case and compel arbitration, or in the alternative stay these proceedings pending the conclusion of arbitration.

Respectfully submitted this 4th day of September 2020.

[2] *See also, Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Fedmet Corp. v. M/V BUYALYK,* 194 F.3d 674, 678 (5th Cir. 1999); *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 & n.21 (1st Cir. 1998); *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Black and Veatch International Co. v. Wartsila NSD North America, Inc.*, 1998 U.S. Dist. LEXIS 20732 (D. Kan. Dec. 17, 1998).). *McGrew*, 2017 U.S. Dist. LEXIS 43963 at *27 (several circuit courts, including the Sixth Circuit, hold that when all the plaintiff's claims are subject to arbitration, dismissal is the proper remedy. *Braxton v. O'Charley's Restaurant Properties, LLC*, 1 F. Supp. 3d 722, 728-29 (W.D. Ky. 2014) (detailing circuit split and listing cases); *see Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them. We have already rejected that argument."); *Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999) (unpublished table decision) ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation in which all claims are referred to arbitration may be dismissed.")); *But see Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269-71 (3rd Cir. 2004.)

JACKSON LEWIS P.C.

*s/ Timothy M. Kratz*
Timothy M. Kratz
Melisa H. Panagakos
950 17th Street, Suite 2600
Denver, CO 80202
Telephone: (303) 892-0404
Facsimile: (303) 892-5575
Tim.Kratz@jacksonlewis.com
Melisa.Panagakos@jacksonlewis.com

*ATTORNEYS FOR DEFENDANT*

**CERTIFICATE OF SERVICE**

I certify that on this 4th day of September 2020, a true and correct copy of the foregoing **DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** was filed and served via CM/ECF upon the following:

Kimberly JaJack
P.O. Box 3191
Parker, CO 80134
Kimberly.JaJack@gmail.com

*PRO SE PLAINTIFF*

*s/ Faith Poindexter*
for Jackson Lewis P.C.