* R R A G R M T 0 1 *

NYLIFE Securities

EXHIBIT B

# Registered Representative Agreement

REGISTERED REPRESENTATIVE INFORMATION

175842
▶REPRESENTATIVE CODE NUMBER

08/24/2019
▶EFFECTIVE DATE

AGREEMENT

This is an AGREEMENT made by NYLIFE Securities LLC (the "Company") and KIMBERLY JAJACK (the "Representative") effective for the offer and sale of securities and other approved products.

**1. RULES OF INTERPRETATION**

A. This Agreement shall be subject to and be governed by the laws of the State of New York and the statutes and regulations of the United States government, as well as the Rules and Regulations of the Financial Industry Regulatory Authority ("FINRA").

B. Wherever a masculine pronoun is used in this Agreement it shall include the feminine, unless the contrary is clearly indicated.

C. The heading of the various sections of this Agreement have been inserted for convenience of reference only and shall not be deemed to be a part of this Agreement.

D. The Company reserves the right from time to time to change any provisions of this Agreement by thirty days written notice to the Representative.

E. Unless terminated, this Agreement shall continue through the end of the calendar year, and then from year to year thereafter.

**2. GENERAL**

A. The Company is a Broker/Dealer registered with the United States Securities and Exchange Commission (the "SEC"), FINRA and in every jurisdiction where it is doing business.

B. The Representative is an individual registered with FINRA and licensed to sell securities in every jurisdiction where he is doing business.

C. The Representative is an independent contractor. Nothing herein shall be construed to create the relationship of employer and employee between the Company and the Representative.

D. The Representative shall not represent any other Broker/Dealer unless agreed to in writing by the Company.

E. This Agreement serves to revoke all prior agreements between the Representative and the Company. However, a Representative acting under a prior agreement, electing not to be bound by this Agreement, is hereby notified that the prior agreement shall be considered terminated thirty days from receipt of this Agreement.

F. Except for the right to receive commissions, the rights, interests and claims of the Representative against the Company arising under or growing out of this Agreement are not assignable, and no assignee shall acquire any rights thereto, without the written consent of the Company. The right to receive commissions under this Agreement may be assigned without the written consent of the Company, but the Company must receive reasonable proof of such assignment before it commences payment to an assignee. The rights of an assignee under any assignment to which consent has been or may be given or to an assignment of the right to receive commissions shall be subject to the paramount and prior lien given to the Company by Section 5 (I).

**3. AUTHORITY**

A. The Company will periodically publish a list of products, which are approved for sale ("approved products"). The Company authorizes the Representative to sell only those products, which have been approved for sale by the Company and for which the Representative is properly registered and licensed to sell.

B. The Representative is authorized to receive for transmittal to the Company only initial payments for the purchase of approved products.

C. The Representative shall have no authority to obligate the Company in any manner whatsoever, except as may expressly be authorized in writing.

**4. PROCEDURES**

A. The Representative will immediately forward to the Company all applications and orders for the purchase of approved products solicited by him for the Company, together with any payment received by him from the customer.

B. All applications for the purchase of approved products are subject to acceptance by the Company and any purchase shall not be deemed to be made until approved and executed by the Company. The Company reserves the right in its sole discretion at any time to reject any and all applications transmitted to it by the Representative and to refund any payments made by the customer.

C. The Representative shall not forward his own funds to the Company, or commingle his own funds, for or on behalf of any customer or otherwise directly or indirectly furnish funds for any customer in connection with any purchase of approved products.

D. The Representative shall not directly or indirectly arrange for, or assist in arranging for, the extension or maintenance of credit to, for, or on behalf of any person in connection with the purchase of approved products.

**5. COMMISSIONS**

A. The Company will pay the Representative a commission for the sale of approved products by the Representative while this Agreement is in force. Such commissions shall be paid at the applicable rates and under the rules and conditions as specified by the respective product areas from time to time.

B. The Representative will not be entitled to a commission until an application for the sale of an approved product or a transaction in connection with the Company's securities brokerage business has been accepted by the Company. The Representative will not be entitled to a commission for an application or transaction that is rejected for any reason.

C. The Company reserves the right to adjust the commission rates applicable to sales of its products, at any time, by written notice to the Representative.

D. All commissions and other compensation payable on the Representative's sales of approved products may be paid to the Representative by New York Life Insurance Company, as a service to the Company, in the manner specified in any Representative's contract the Representative has with New York Life Insurance Company or New York Life Insurance and Annuity Corporation or as specified in any applicable additional contract including any applicable training allowance agreements.

E. If the Representative violates this Agreement, the Company may retain, to the extent it deems necessary, any commissions the Representative would otherwise be entitled to receive.

F. In the event that a claim or inquiry relating to the securities business of the Representative is made, and for which commissions are or may become due the Representative, the Company may withhold to the extent it deems necessary any such commissions, pending disposition of such matter.

G. The Representative agrees to repay any commissions received if the Company rescinds a transaction.

H. The Representative agrees to reimburse the Company for all attorney's fees, costs, expenses and losses of every kind which the Company may at any time incur or pay by reason of the existence of this Agreement.

I. The Company is hereby given a paramount and prior lien upon any commissions payable under or as a result of this or any previous Agreement and under any and all amendments to this Agreement as security for the payment of any claim or indebtedness or reimbursement whatsoever due or to become due to the Company from the Representative. Any sums becoming due to the Representative at any time may be applied directly by the Company to the liquidation of any indebtedness or obligation of the Representative to the Company, but the failure to so apply any sum shall not be deemed a waiver of the Company's lien or any other sums becoming due not impair its rights to so apply such sums.

J. The Representative will not be paid any commissions after the date this Agreement is terminated.

K. The Representative waives payment of the Representative's portion of any fees, which may be receivable under Rule 12b-1 until such time that the Company is in receipt of such fee(s).

**6. COMPLIANCE**

A. The Representative agrees to comply with all rules, regulations, and procedures as set forth by the SEC, FINRA, the Company, the NYLIFE Securities LLC Registered Representative Handbook and with all other applicable federal and state laws, rules, regulations, and procedures of the Company relating to the Representative's activities in connection with the sale of approved products, and to accept the supervision of the Company and its designated supervisor(s). The Representative shall observe high standards of commercial honor and just and equitable principles of trade in all respects in the sale of approved products; shall not utilize advertising media nor any printed or other materials with regard to those products other than those approved by the Company; and shall not use such media or materials in any manner other than as prescribed by the Company. The Representative understands that he has a continuing obligation and agrees to timely and accurately report all Form U4 information and keep the information current at all times.

B. The Representative agrees that he will make no written or oral representations concerning the approved products offered for sale by the Company except such as are contained in the current prospectuses and authorized sales literature made available by the Company. The Representative shall not solicit business through mailings or advertisements or other media unless the contents thereof have previously been approved in writing by the Company.

C. The Company has an affirmative obligation to supervise the Representative, and the Representative has a corresponding obligation to limit his business to products and transactions approved by the Company. The Representative must obtain written approval from the Company prior to offering any product (other than insurance contracts) that does not appear on the list of approved products or prior to executing transactions in any securities, commodities or futures account (other than his own account) not maintained with the Company. This rule is applicable to all private transactions in products, which may involve securities (such as unregistered private placements or rare coins) whether or not compensation is received and regardless of the capacity in which the Representative is acting in the transaction (e.g., General Partner). The Representative is strictly prohibited from participating in transactions involving viatical settlements (a/k/a life settlements) through the Company or any other entity. State securities departments, FINRA and the SEC consider the sale of viatical settlement contracts to constitute the sale of investment contracts, which are securities. Thus, the Company will deem Representatives who have sold viatical contracts to have engaged in private securities transactions.

D. The Representative understands that all phone calls between the Representative and the Company may be recorded by or on behalf of the Company. The Representative hereby expressly consents to all such recordings of this conversation with the Company.

**7. TERMINATION AND SUSPENSION**

A. This agreement is terminated automatically when:

1. The Representative's contract the Representative has with New York Life Insurance Company is terminated.
2. The Representative becomes ineligible to sell securities.

B. This Agreement may be terminated or suspended by the Company immediately, with or without cause, upon written notice to the Representative.

C. This Agreement may be terminated by the Representative immediately upon written notice to the Company.

D. The Representative agrees that upon termination of this Agreement, resignation or retirement, he will not directly or indirectly contact for a period of eighteen months following such termination, resignation or retirement, any purchasers of products offered by the Company or its affiliates within those states in which the Representative is licensed to sell securities, for the purpose of inducing or attempting to induce such purchasers to redeem, cancel, allow to lapse, or otherwise surrender approved products sold through the Company or its affiliates.

**8. FEES**

The Company reserves the right to assess the Representative for any fees and costs incurred to qualify the Representative for the performance of this Agreement or to maintain this Agreement. Further, the Company reserves the right to assess the Representative for any fines, late fees or penalties imposed by FINRA based on the Representative's failure to comply with FINRA Rules or the Company's Form U4 reporting procedures. The Company also reserves the right to issue disciplinary action for failure to comply with the Company's Form U4 reporting procedures, including the requirement to make timely regulatory filings.

**9. ARBITRATION**

A. The Agent and New York Life (which includes New York Life, NYLIFE Securities LLC and their affiliates, successors, employees and agents) agree that any dispute, claim, request for equitable relief, or controversy arising between them, including but not limited to those alleging wrongful or unlawful discharge, or employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation, common law or rule (hereinafter "the Claim"), as well as any dispute as to whether such Claim is arbitrable, shall be resolved by a final and binding arbitration proceeding administered by the Financial Industry Regulatory Authority ("FINRA") in accordance with its applicable arbitration rules ("FINRA's arbitration rules") then in effect. These rules may be found at www.finra.org.

B. The following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect: (1) claims for workers' compensation benefits (except for claims of retaliation or discrimination), unemployment insurance, or state or federal disability insurance; (2) claims for benefits or breach of fiduciary duty arising under or relating to a plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"); (3) matters within the jurisdiction of the National Labor Relations Board; and (4) any other dispute or claim that has been excluded from arbitration by applicable law that is not preempted by the Federal Arbitration Act.

C. In the event that a claim is not arbitrable under FINRA's arbitration rules, or FINRA refuses to arbitrate the Claim, the Agent and New York Life agree that the Claim, as well as any dispute as to whether such Claim is arbitrable, shall be resolved by a sole arbitrator in a final and binding arbitration proceeding administered by the American Arbitration Association (hereinafter "AAA") in accordance with its rules for the resolution of employment disputes then in effect. These rules may be found at www.adr.org.

D. The Agent and New York Life both agree to waive any right to a jury trial with respect to any Claim covered by this agreement.

E. The Agent and New York Life agree that no claim may be initiated or maintained on a class action, collective action or representative action basis either in court or arbitration. All Claims must be brought in a party's individual capacity, and not as a plaintiff or class representative or member or otherwise on behalf of others in any purported class, collective, or representative proceeding. The Agent and New York Life further agree that if, for any reason, the waiver of any ability to initiate or maintain a claim as a class, collective or representative action is found to be unenforceable or invalid, then any such class, collective or representative action or claim shall be litigated and decided in a court of competent jurisdiction, and not in arbitration. Any issue concerning the enforceability or validity of the waiver must be decided by a court, and not by an arbitrator.

F. Claims may not be joined or consolidated in arbitration with claims brought by other individuals, and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties. The parties agree that in the arbitration of any claims between them, the arbitrator will be required to resolve the dispute based on the applicable law and the facts presented as a matter of record. Neither party will request, nor will the arbitrator be permitted, to treat as binding or preclusive any decision or ruling by a different arbitrator resulting from a dispute between New York Life and any other Agent or person.

G. Exclusive of Claims alleging employment discrimination including employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation or rule, or any other claims as to which New York Life is required under applicable law to bear the costs and expenses of the arbitrator(s) and/or any other type of cost or expense that the Agent would not be required to bear if the claims were brought in court, the costs and expenses of the arbitrator or arbitrators for any arbitration shall, to the extent permitted by FINRA or AAA's rules, be split evenly between the Agent and New York Life.

H. Nothing in this Agreement should be interpreted as restricting or prohibiting the Agent from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation. Any dispute or claim that is covered by this Agreement but not resolved through the federal, state, or local agency proceedings must be submitted to arbitration in accordance with this Agreement.

I. This section shall survive termination of this contract by either party.

IN WITNESS WHEREOF, the parties to this Agreement have subscribed their names hereto and to a duplicate hereof. This Agreement shall take effect as of the effective date on Page 1 hereof, when duly assigned by the Representative and countersigned by duly authorized Representative of NYLIFE Securities.

[signature]

**Gerard A. Rocchi**
**President & CEO of NYLIFE Securities**

**COUNTERSIGNED BY**

[signature]
**Registered Representative**

[signature]
▶NAME

A. Leroy Garcia
▶PRINT NAME

Managing Partner
▶TITLE, NYLIFE SECURITIES LLC

8/27/19
▶DATE

**NYLIFE Securities LLC, Member FINRA, SIPC**
51 Madison Avenue ▪ New York, NY 10010 ▪ 800.695.4785
Account carried by National Financial Services LLC, Member NYSE, SIPC

NEW YORK LIFE

## Acknowledgement for Registered Representative (NASD Notice to Members 07-06 and FINRA Rule 2273)

As a new Agent and Registered Representative transferring a FINRA registration to NYLIFE Securities LLC ("Company" or "NYLIFE") I am required to comply with federal and state securities laws, FINRA rules, and Company policies. The Company's policies and procedures governing the conduct of its Registered Representatives are detailed in the Agent/ Registered Representative Handbook ("Handbook").

FINRA Rule 2273 and NASD Notice to Members 07-06 specifically apply to a Registered Representative who transfers a FINRA registration from one FINRA member to another as more fully described below.

**FINRA Rule 2273**

FINRA prepared an Educational Communication that focuses on important considerations for a former customer who is contemplating transferring assets to an account or policy assigned to his or her former representative who is now at NYLIFE. A copy of the FINRA Educational Communication is included with this Acknowledgement and also available on Agency Portal.

I understand and will comply with the requirements of FINRA Rule 2273 as follows:

- I must provide a copy of FINRA's Educational Communication upon first oral or written contact with any of my former customers who had a securities account assigned to me at my prior firm.
- The delivery of FINRA's Educational Communication applies for a period of three months following the date of my association with NYLIFE Securities.
- If the contact is in writing, FINRA's Educational Communication must accompany the written communication.
- If the contact is by email, I may hyperlink directly to FINRA's Educational Communication or include it as an attachment to the email.
- If the contact is oral, I must notify the former customer orally that FINRA's Educational Communication will be provided not later than three business days after the contact.

**NASD Notice to Members 07-06**

I understand NASD Notice to Members 07-06 (Special Considerations When Supervising Recommendations of Newly Associated Registered Representatives to Replace Mutual Funds and Variable Products), requires NYLIFE to closely review for suitability all recommendations made by me to my current or former clients to liquidate, replace, or surrender a mutual fund or variable annuity ("VA") during my first year.

In general, the exchange of one VA for another will only be deemed suitable if it is in the best interests of the customer and also satisfies these conditions: (1) there is no surrender charge; (2) the mortality and expense (M&E) charges on the new product are equal to or lower than the old product; and (3) there is no loss of a death benefit IF the customer indicates death benefit is a reason for purchasing the new annuity.

**Acknowledgement:** I acknowledge reading the above descriptions of FINRA Rule 2273 and NASD Notice to Members 07-06 and agree to comply with all of the identified requirements. I also understand any future updates to the above requirements will be included in the Handbook or other field communications as needed.

Kimberly JaTack 175842
Name of Registered Representative Code Number

A. Leroy Garcia
Name of Partner/Managing Partner

[signature] 8-26-2019
Signature Date

[signature] 8/27/19
Signature Date

* N T M A C K F R M 0 1 *

Kimberly JaSack 175842

# III. ADDITIONAL INFORMATION

1. To the extent that I am bound under applicable state law by a non-compete and/or non-solicitation of customers or agents/employees clause or agreement with my current or any former company or employer, I agree that it is my personal legal responsibility to abide by such clause or agreement. I also acknowledge that it is my personal responsibility to consult with my own counsel, if necessary, to determine the extent of my obligations under any such clause or agreement.
☐ I acknowledge reading and understanding the above statement.
*Please note that language regarding solicitation of customers or other agents after leaving a company may be found in your contract with the company or companies with which you are or were affiliated, in any severance or other agreements with such companies, as well as in company handbooks, side letters or other materials that have been incorporated into your employment, agent or other contract or agreement.*
2. Are you *currently* engaged in any other outside business activity (OBA) such as an officership, directorship, board membership, partnership, sole proprietorship, trusteeship, administrator or executor of an estate, sponsorship or participation in an investment club, or do you hold any employment with any other business entity or organization other than those previously stated in Employment Section II? *(Please disclose all positions regardless of whether you received any form of compensation for your activities, including, but not limited to, positions on boards of non-profit and charitable organizations and school districts.)* ☐ Yes ☐ No
If yes, give details ______
3. Do you *currently* use, or have you previously used in the last 5 years, a "Doing Business As" (DBA) name related to the sale of any insurance or investment products? ☐ Yes ☐ No
If yes complete the following:
DBA Name: ______ State that DBA is filed in: ______
Purpose of DBA: ______ Method of compensation: ______
4. What are your long-range career plans? ______

# IV. EXPERIENCE

**A. INSURANCE EXPERIENCE** ***(If none, write none)***

| Name of Company | Contact Person | Type of Contract Agent or Broker | Number of Ind. Life & Annuity Cases Sold | Total Life & Annuity Commissions | Total First Year Commissions | Total Training Allowance/ Salary |
|---|---|---|---|---|---|---|
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |

Have you ever held a life insurance or annuity license? ☐ Yes ☐ No
If yes, did you ever solicit life insurance, or annuities? ☐ Yes ☐ No
If yes, give exact dates and jurisdiction(s) ______
If yes, did you receive a training allowance or other financial arrangement? ☐ Yes ☐ No
If yes, give all details including exact periods and amounts ______

Have you ever had an insurance agent's license suspended, revoked, or refused for any reason? ☐ Yes ☐ No
If yes, give details ______

**B. SECURITIES EXPERIENCE** ***(If none, write none)***

| Name of Company | Contact Person | Total First Year Commissions |
|---|---|---|
| None (KJ) 1-8-2018 | | $ |
| | | $ |
| | | $ |
| | | $ |

Are you currently, or have you ever been, a registered representative with FINRA? ☐ Yes ☒ No (KJ) 1-18-2018

Have you been employed by a Futures Commission Merchant, a Commodity Futures Trading Commission Introducing Broker or other entity that conducted futures-related business? ☐ Yes ☒ No (KJ) 1-18-2018
If yes, provide a copy of your most recent CFTC Form 8-T, including any amendments.

Have you ever had a securities license suspended, revoked, or refused for any reason? ☐ Yes ☒ No KJ 1-18-2018
If yes, give details ______

1190 (10/15)

## V. PERSONAL DISCLOSURE *(Attach separate sheet if necessary)*

### FAMILY RELATIONSHIPS / CONFLICTS OF INTEREST

1. Are you related to an employee or agent of New York Life, its subsidiaries or affiliates, or to a member of New York Life's Board of Directors?

Yes ☐ No ☑

If yes, please provide the name and the nature of the relationship.

2. Do you have a professional or personal relationship that may be considered a potential conflict of interest in serving as a New York Life agent? (A conflict of interest will not necessarily preclude employment).

Yes ☐ No ☑

If yes, please provide the name and the nature of the relationship.

### PERSONAL POLITICAL CONTRIBUTIONS

Within the past two years, have you or anyone on your behalf:

1. Made contributions to any candidate seeking or holding political office in any U.S. state or municipality (this includes candidates for federal office who currently hold state or local office)?

Yes ☐ No ☑

2. Participated in political fundraising activities on behalf of any candidate seeking or holding political office in any U.S. state or municipality or soliciting or coordinating contributions to an official or candidate (this includes candidates for federal office who currently hold state or local office)?

Yes ☐ No ☑

3. Made contributions to or fundraising activities on behalf of any political action committee (other than NYLPAC) or non-national political party committee (such as the New York State Republican Party or Cook County Democratic Party)?

Yes ☐ No ☑

If you answered "yes" above, please provide additional details for the information requested below:

i. The name of the candidate, political action committee or non-national political party.
ii. The state or municipality in which the contribution was made.
iii. The office for which the candidate seeks to be elected.
iv. Whether the candidate currently holds office and if so, what office?
v. The amount of the proposed contribution or a description of the proposed activity.
vi. The date (MM/YY) of the contribution or activity.
vii. Whether the individual contributing may legally vote for the candidate in the election.

| Agent Name | Agent Code | Agent Signature |
| --- | --- | --- |
| Kimberly JaJack | 175842 | [signature] |