# EXHIBIT A

## PLAINTIFF'S SUR-REPLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
8:26 am, Nov 30, 2020
JEFFREY P. COLWELL, CLERK

Civil Action No. 20-cv-01590-MEH

KIMBERLY JAJACK

Plaintiff,

v.

NEW YORK LIFE INSURANCE COMPANY (NEW YORK LIFE)

Defendant.

---

**PLAINTIFF'S "UNOPPOSED" SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS AND COMPEL ARBITRATION**

---

Plaintiff Kimberly JaJack ("Plaintiff") respectfully submits this Sur-reply in Opposition to New York Life Insurance Company ("New York Life" "Defendant") Reply in Support to its Motion to Dismiss, Or In The Alternative, Stay Proceedings and Compel Arbitration (the "Reply"), in order to rebut and respond to any new issues raised, incorrect statements, false, misleading and or deceptive characterization of statements made by New York Life. The Defendant's' Reply consistently ignores Plaintiff's arguments, or misrepresents them. What is significant about Defendants' Reply is that New York Life does not dispute any of Plaintiff's arguments in her opposition that (1) the Defendant intentionally and knowingly was already in violation of the Title VII Civil Rights Act federal law that segregated and assigned Plaintiff

to New York Life's African-American Market Unit ("AAMU") Group 4, solely based on Plaintiff's race, an African-African, and meticulously classified Plaintiff, race-specific, as "Dear African American Market Unit Agent", to ensure the segregation of Plaintiff as an African-American agent from Caucasian agents [Dkt. 34, pg. 25] or (2) failed to disclose "outstanding contract requirements" and any other financial issue and (3) Defendant's non-compliance of the Financial Industry Regulatory Authority ("FINRA") Form 3080 that ceased to exist since 2009 [Dkt. 34, pg. 24], all of which were not disclosed, communicated, listed in or as a condition of employment to Plaintiff prior to any contracts and agreements. Defendant misled and deceived Plaintiff, and these misrepresentations are fraudulent. LaCourse v. Kiesel, 366 Pa. 385, 390, 77 A.2d 877, 880 (1951). This makes the contracts and agreements legally invalid, voidable and unenforceable. *Teare v. Sussman, 120 Colo. 488, 210 P.2d 446 (1949).* The Plaintiff was entitled to have full disclosure prior to the Contracts and Agreements -- not merely **after** the fact. If reasonable minds could not differ as to the facts giving rise to a duty to disclose, the existence of that duty is a matter of law for the court to determine. *See, e.g., Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458 (1937).*

**A. The Plaintiff states the following:**

1. On September 4, 2020, the Defendant filed a Motion to Dismiss, Or in the Alternative, Stay Proceedings and Compel Arbitration [Dkt. No. 22].

2. On October 23, 2020, the Plaintiff filed her Opposition to Defendant Motion to Dismiss, Or in the Alternative, Stay Proceedings and Compel Arbitration ("Opposition") [Dkt. No. 34].

3. On November 13, 2020, the Defendant filed its Reply to Support its Motion to Dismiss, Or in the Alternative, Stay Proceedings and Compel Arbitration.

4. The Defendant's Reply makes new facts, incorrect statements, misleading or deceptive characterization of statements and or Plaintiff's position that the Plaintiff should be permitted to rebut and correct on the record.

**B. The Defendant's new facts, incorrect and mischaracterizations of the Plaintiff's statements to include but not limited to the following:**

> **1.** Page 2, the Defendant's Reply states: "Plaintiff alleges she as a victim to a "bait and switch" because she thought she as an independent contractor . . . ."
>
> Page 7, the Defendant's Reply states: ". . . . Plaintiff argues that the arbitrations agreements should be unenforceable because she believes she was subject to a "bait and switch" scheme regarding her status as an independent contractor versus and employee . . . ."

The Plaintiff has made no such statements or belief that a "bait and switch" scheme was regarding her status as an independent contractor versus employee. The Defendant statement is incorrect, intentionally false, deceptive and an extraordinary mischaracterization. Plaintiff's opposition states: "Plaintiff also contends that the contract agreement(s) were obtained by a "bait and switch" tactic, deception . . . . This is the bait, once the Defendant had the Plaintiff's contract(s), it then gives Plaintiff the terms and conditions different from what New York Life neutral presentation and states approximately 30-days later, after the contract, that the Plaintiff has "outstanding contract requirements", financial history issue and subsequently, segregated Plaintiff to New York Life's racial African-American Market Unit ("AAMU") Group 4,

all of which were not communicated to Plaintiff or listed in the contract or as a condition in the contract. Furthermore, the AAMU salutations were "Dear African-American Market Unit Agent, Managers and Supporters . . . . This is the switch. The Defendant was clearly not in compliance with FINRA and intentionally violated the Title VII Civil Rights Act. The Defendant used a bait and switch tactic and intentionally misrepresented the contract(s) and agreement(s) to Plaintiff". [Dkt. 34, pg. 8, ¶ 2]. The Defendant's intentional distortion and false characterization of Plaintiff's statement is intended to persuade the Court to not to rely upon New York Life's violation, non-compliance and deception. This makes the contracts and agreements invalid, voidable and unenforceable.

> **2.** On page 2, the Defendant's Reply states: ". . . . she is an educated professional with an employment background in the financial industry and was not "tricked" in any way by the agreements".

Defendant's Reply states a new fact that Plaintiff has an "employment background in the financial industry and was not "tricked" in any way by the agreements, which is unsupported, false and incorrect. Defendant offers no evidence to support its assertion. The Plaintiff asserts she does not have an employment background in the financial industry and held no license to conduct business in the financial industry as required by law with the Division of Insurance and the Financial Industry Regulatory Authority ("FINRA"). Plaintiff obtained a Life, Accident and Health license in or about June, 2017, and became associated with an insurance company in or about July, 2017, before her affiliation with New York Life. Exhibit B. Five months does not constitute a background in the financial industry. Plaintiff was required to sign an Application, and FINRA's Form 3080 that ceased to exist since 2009, to obtain possible employment with

Defendant. New York Life required Plaintiff to sign the small font size Registered Representative Agreement ("RR") on August 27, 2019 [Dkt. 22, #2, Exhibit B]. Defendant stated to Plaintiff ". . . .AS A REGISTERED REPRESENTATIVE OF NYLIFE SECURITES LLC, THE ABOVE-MENTIONED INDIVIDUAL MUST SIGN AND DATE THE ATTACHED RR AGREEMENT . . . ." [Exhibit C]. Plaintiff did not ask to sign the Registered Representative Agreement, and signed only as a condition of maintaining employment. Defendant terminated Plaintiff on September 30, 2019; 30-days after Defendant required the Plaintiff to sign the RR Agreement. Thirty days does not constitute a background in the financial industry and Defendant has no record of Plaintiff conducting business as a Registered Representative. Because the employment application, the extremely small print, of NYLIFE Securities LLC Uniform Application, Rev. Form U4 (05-2009) [Exhibit D], Introductory Contract, Agent's Contract N-9 and the Training and Allowance Subsidy Agreements did not disclose, list in the or as a condition in the contracts and agreements, "outstanding contract requirements", the segregated and assignment of New York Life's "African American Market Unit", a violation of the Title VII Civil Rights, the Defendant deceived and concealed with the intent that the plaintiff would rely on false impression and misrepresentation to trick the Plaintiff. New York Life failed to disclose in the contracts and agreements that Plaintiff had "outstanding contract requirements" and Plaintiff would be segregated, assigned and classified to Defendant's employment practice of the African American Market Unit, solely based on Plaintiff's race, An African American. Defendant was already in violation of Title VII, non-compliance of FINRA Form 3080 and "outstanding contract requirements" are to be disclosed prior to contracts and agreements not

after. This is "trickery". Intentional misrepresentation, trickery, deceit, concealment, etc. is fraud. This is legally invalid, voidable and unenforceable. [Dkt. 34, pg. 8 and 9].

> **3.** On page 2, the Defendant's Reply states: "Plaintiff seems to believe that she was forced to waive any claims under the constitution or Title VII, but this is not true. Plaintiff waived only her rights to a jury trial and to litigate her case in a civil court".
>
> On page 7, the Defendant's Reply states: "Plaintiff alleges that the terms of the arbitration agreements were not anticipated because she did not understand that she was waving her rights . . . ."

The Defendant statement is misleading and incorrect. Plaintiff points out in her opposition that she would not have understood the legal significance of the arbitration provision because it [contracts and agreement] did not state the Plaintiff is waiving a U.S. Constitution and Title VII rights. . . and asserted "The Defendant knew this blatant discriminatory practice violated federal law of the Title Civil Rights Act". Plaintiff's case claim arises under the U. S. Constitution and the laws of the United States and is brought under 42. U.S.C. §§ 200e, et seq. and the Age Discrimination in Employment Act ("ADEA"). [Dkt. 34, pg. 18, ¶ 1]. Plaintiff also states "New York Life did not specifically state in the contract and agreements that the Plaintiff is signing a waiver or waiving the Title VII Civil Rights federal laws under the United States Constitution". [Dkt. 34, pg. 14, ¶ 1].

**Under the Seventh Amendment to the United States Constitution states:**

> "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The seventh amendment provides for the right to jury trial in all actions at common law exceeding the value of twenty dollars".

The Defendant mischaracterized Plaintiff position and alludes that "they did not force Plaintiff to waive claims under the U.S. Constitution or Title VII, but only waived Plaintiff right to a jury trial and case in a civil court". Title VII derives from the common law and Plaintiff has a right of trial by jury under the U. S. Constitution. New York Life takes that right away and violates Plaintiff's the U. S. Constitution rights. The constitutional court system establishes a right to conduct discovery, right to appeal, punitive damages and other rights and all of these rights – discovery, right to appeal the decision of the arbitrator, punitive damages are absent in arbitration. The courts are open to every American citizen, and no citizen can be denied. Plaintiff is an American citizen. The Defendant was already in violation of Title VII.

**Further, Title 18, U.S.C., Section 241 - Conspiracy Against Rights:**

> This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same).

> **4.** On page 5, the Defendant's Reply states: "Plaintiff alleges that she did not understand the terms of the contracts because of "legal jargon" within the documents and as surprised by the contents and meaning of the arbitration provisions. This claim also fails . . . .". Plaintiff alleges no fraud or concealment and signed the waiver")".

The Defendant disingenuously attributes to the Plaintiff's statement that is incorrect, "Plaintiff contend that she is educated within the respective of academic studies of a degree of public administration; however, she denies of being "educated" and "with the knowledge and experience to understand", nor would a reasonable person or average individual, understand

and have knowledge and business experience to the legal jargon of Agreements . . .". Further, the Plaintiff has alleged facts that are material and stated "facts have been set forth that indicates that the contracts and agreements arbitration provisions are a product of deception, trickery, and fraudulent on the part of the Defendant and not mutual assent" [Dkt. 34, pg 3, ¶ 1].

> **5.** On page 7, the Defendant's Reply states: "Defendant brings on new agents as part-time independent contractors . . . . before they are hired as full-time employees. These new agents sign an Introductory Agent's Contract which governs the relationship between agent and Defendant until such time as s/he is ready to move to full-time employee status. Plaintiff signed this introductory Agents' Contract on January 18, 2018 [Dkt.22-1]. . . .after" The introductory Agent fulfills the introductory period requirements. Defendant "triggers" the TAS Agreement. The TAS Agreement superseded the Agent's Introductory Agreement and changes the relations between agent and Defendant to an employee/employer relations. [Dkt. 34, p. 52, ¶ 2]. . . ."
>
> On page 8, the Defendant Reply states: "The U4 Disclosures (both the Form 3080 . . . ."

The Defendant has belied and caused yet another incorrect, misleading statement and has changed its position several times and or took inconsistent positions with regard to the Contracts and Agreements. Defendant gave Plaintiff's an Introductory Contract as an Independent Contractor that required her to attend full-time meetings, training sessions, complete Defendant's requirements of production to solicit products, make calls, meet with clients, etc., in order to "trigger" an Agent's Contract N-9, **not part-time**, all which were a part of training. In the Defendant's Motion to Dismiss states: "Ms. JaJack began her affiliation with New York Life as a qualified insurance agent in the company's Colorado General Office in 2018. See Complaint ¶ 2, p. 20. On or about January 1, 2018, Ms. JaJack agreed to the terms of the Training Allowance Subsidy ("TAS") Agreement and the N-9 Agreement with NYLIC. [Dkt. 22, p. 2 ¶ 2].

New York Life acknowledged for the first time it **simultaneously** gave Plaintiff both an Agent's Contract N-9 (Independent Contractor) and Training Allowance Subsidy Plan Agreement ("TAS") (Employer/Employee). Both of the Agent's Contract N-9 and TAS Agreement were given by Arthur (Leroy) Garcia, former managing partner to Plaintiff, effective on March 16, 2018, and were not given to Plaintiff on January 1, 2018 [Dkt. 34, p. 36, Exhibit D] and [Dkt. 34, p. 51, Exhibit E]. Defendant acknowledged in the Joint Proposed Scheduling Order that states: "Defendant hired Plaintiff in March 2018 (not January 1, 2018) as commission-only outside salesperson" [Dkt. 22, page 7 ¶ 5]. <u>The Reply now states</u>: "Plaintiff signed this Introductory Agents Contract on January 18, 2018. [Dkt. 22-1] . . . . Defendant "triggers" the TAS Agreement. The TAS Agreement superseded the Agent's Introductory Agreement". This is a new fact, incorrect, and deceptive because, here, the Defendant <u>now</u> states and admits it gave Plaintiff an Introductory Contract on January 18, 2018, and "once Defendant "triggers" the TAS Agreement (March 16, 2018) it supersedes the Introductory Contract. The Defendant has been inconsistent with the contracts and agreements and intentionally disregards and seeking to evade the Agent's Contract N-9 (Independent Contractor) **simultaneously** with the TAS Agreement (Employer/Employee Relationship), both effective on March 16, 2018, again given by Leroy Garcia. Defendant now is "hiding the ball", the Agent's Contract N-9. Defendant's "outstanding contract requirements", the segregated African-American Market Unit ("AAMU") Group 4, were <u>after</u> the contracts and agreements. In Defendant's Motion to Dismiss, Dkt. 22-1, Exhibit A, is the Agent's Contract N-9 (Independent Contractor), effective March, 2018, not an "Introductory Contract" effective January, 2018 [Dkt. 34, Exhibit A]. The Defendant's reliance on FINRA's

U4 Form 3080 that ceased to exist since 2009, which was given to Plaintiff on January 5, 2018, intentionally misrepresents a form that does not exist. These exceptions do not excuse non-compliance and false representation. Full disclosure is prior to contracts and agreements -- not merely after the fact.

> **6.** On page 7, Defendant's Reply, states: "Plaintiff misstates the terms of the fee requirements of the Arbitration agreement....Defendant affirms herein that it will pay 100% of the arbitration fees . . . . "

The Defendant asserts new facts that is not stated, listed or disclosed in the contracts and agreements, or in Defendant's Motion to Dismiss that Defendant "will pay 100% of the arbitration fees in this matter". Defendant contracts and agreements are convoluted, and Plaintiff again restates, "contracts and agreements must be free from being too ambiguity and have a clear reflection of the meaning to the term and conditions and not have at least two conflicting interpretations that causes confusion and unconscionability. A reasonable person must understand, and accordingly, an agreement to arbitrate must be a product of mutual assent and requires a meeting of the minds". Defendant's contracts and agreements are ambiguous and this is not "clear and unmistakable" [Dkt. 34, pg. 5 ¶ 2 and pg. 6]. Plaintiff restates Motion of Opposition that included; the Defendant was already in violation of Title VII, and non-compliance. This makes the contracts and agreements invalid, voidable and unenforceable.

Pursuant to D.C. COLO. L. Civ. R. 7.1(a), Plaintiff has conferred with Defendant's counsel of record; counsel for the Defendant unopposed this Sur-reply.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully request that the Defendant's Motion to Dismiss, Or In The Alternative, Stay Proceedings and Compel Arbitration be denied.

Dated: November 27, 2020

Respectfully Submitted,

Kimberly JaJack, *Pro Se*
P.O. Box 3191
Parker, Colorado 80134
Telephone: (303) 598-8917
Kimberly.JaJack@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of November, 2020, I served a true and correct copy of the foregoing **Plaintiff's "Unopposed" Sur-Reply In Further Opposition to Defendant's Reply In Support Of Its Motion To Dismiss, Or In The Alternative, Stay Proceedings and Compel Arbitration** via electronic mail (e-mail), to the counsel of record listed below:

Timothy M. Kratz
Melisa H. Panagakos
Jackson-Lewis PC Denver
950 17th Street, Suite 2600
Denver, CO 80202

Timothy.Kratz@jacksonlewis.com
Melisa.Panagakos@jacksonlewis.com

*COUNSEL FOR DEFENDANT*

Kimberly JaJack, *Pro Se*

Print

**JAJACK, KIMBERLY**

National Producer Number:

**Business Address**

**Phone**

EXHIBIT B

## Licenses

| License Type | License Number | Original Issue Date | Status | Effective Date | Expiration Date |
|---|---|---|---|---|---|
| Resident Producer | | 06-14-2017 | Active | 06-14-2017 | 05-31-2021 |

**Qualifications (Authorized Lines of Insurance)**

| Qualification Type | Original Issue Date | Status | Effective Date |
|---|---|---|---|
| Accident and Health | 06-14-2017 | Active | 06-14-2017 |
| Variable Products | 08-29-2019 | Active | 08-29-2019 |
| Life | 06-14-2017 | Active | 06-14-2017 |

Revise Inquiry

Copyright © 1998-2020 Sircon Corp. | [illegible] | 877-876-4430 | 1500 Abbot Rd Ste.100 | East Lansing, MI 48823

# FW: Registered Representative Agreement KIMBERLY JAJACK

Arthur L Garcia

**Sent:** Monday, August 26, 2019 6:02 AM
**To:** Jajack, Kimberly
**Cc:** Callie Collins
**Attachments:** RR Agreement - - pdf 3) ; Educational Communication.pdf (224 KB)

EXHIBIT C

Kimberly,

Congrats on passing your Series 6 test!! Way to go. Do make sure you complete these attached documents and return to us ASAP so that we can finalize your registration on our end. We will also need to make sure you've completed some of the CBTs through NYLIC University in order to sell some specific products, but I can walk you through that if you'd like.

Great work!

A. Leroy Garcia
MANAGING PARTNER • COLORADO GENERAL OFFICE

New York Life Insurance Company

"Success is not magical or mysterious. Success is the natural consequence of consistently applying basic fundamentals." - Jim Rohn

If you do not wish to receive email communications from New York Life and/or NYLIFE Securities LLC., please reply to this email, using the words "Opt out" in the subject line.

Please copy email_optout@newyorklife.com New York Life Insurance Co., 51 Madison Ave., New York, NY 10010

-----Original Message-----
From: New York Life Insurance Company
Sent: Sunday, August 25, 2019 10:16 AM
To: IPS_CLRU_D44@newyorklife.com
Subject: Registered Representative Agreement KIMBERLY JAJACK

We are pleased to inform you that the above-mentioned individual has been approved as a Registered Representative (RR) of NYLIFE Securities LLC by successfully passing the FINRA Series 6 or Series 7 Examination. Prior to the solicitation of any registered product business, the Registered Representative should consult the State Solicitation Requirements located on Agency Portal/Standards & Compliance/Licensing-Registration/State Solicitation Requirements, to determine the appropriate licensing requirements.

AS A REGISTERED REPRESENTATIVE OF NYLIFE SECURITIES LLC, THE ABOVE-MENTIONED INDIVIDUAL MUST SIGN AND DATE THE ATTACHED RR AGREEMENT. THE SECOND DOCUMENT, "FINRA ACKNOWLEDGMENT FOR REGISTERED REPRESENTATIVE (NASD NOTICE TO MEMBERS 07-06 AND FINRA RULE 2273)" IS REQUIRED ONLY FOR REGISTERED REPRESENTATIVES WHO HAVE TRANSFERRED THEIR FINRA REGISTRATION TO NYLIFE SECURITIES LLC FROM ANOTHER BROKER DEALER. BOTH MUST BE COUNTERSIGNED AND DATED BY YOUR MANAGING PARTNER OR, IF APPLICABLE, THE COO OF THE GENERAL OFFICE.

Please print two copies of the RR Agreement and "FINRA Acknowledgement for Registered Representative" and complete as follows:

One fully executed RR Agreement and "FINRA Acknowledgement for Registered Representative" must be scanned and sent via GEODE within 10 days and the other copy of the executed RR Agreement and "FINRA Notice to Acknowledgment for Registered Representative" should be given to the Agent to retain for his/her records.

PLEASE NOTE: If fully executed copies of the RR Agreement and "FINRA Acknowledgement for

# EXHIBIT D

Rev. Form U4 (05/2009)

UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

| | |
|---|---|
| INDIVIDUAL NAME: Kimberly JaJack | INDIVIDUAL CRD #: |
| FIRM NAME: NYLIFE Securities LLC | FIRM CRD #: |

## 15. SIGNATURES

Please Read Carefully. All signatures required on this Form U4 filing must be made in this section.

A "signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

15A. INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT This section must be completed on all initial or Temporary Registration form filings.
15B. FIRM/APPROPRIATE SIGNATORY REPRESENTATIONS This section must be completed on all initial or Temporary Registration form filings.
15C. TEMPORARY REGISTRATION ACKNOWLEDGMENT This section must be completed on Temporary Registration form filings to be able to receive Temporary Registration.
15D. INDIVIDUAL/APPLICANT'S AMENDMENT ACKNOWLEDGMENT AND CONSENT This section must be completed on any amendment filing that amends any information in Section 14 (Disclosure Questions) or any Disclosure Reporting Page (DRP).
15E. FIRM/APPROPRIATE SIGNATORY AMENDMENT REPRESENTATIONS This section must be completed on all amendment form filings.
15F. FIRM/APPROPRIATE SIGNATORY CONCURRENCE This section must be completed to concur with a U4 filing made by another *firm* (IA/BD) on behalf of an individual that is also registered with that other *firm* (IA/BD).

## 15A. INDIVIDUAL/APPLICANT'S ACKNOWLEDGEMENT AND CONSENT

1. I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge. I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers.

2. I apply for registration with the *jurisdictions* and *SROs* indicated in Section 4 (SRO REGISTRATION) and Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time and, in consideration of the *jurisdictions* and *SROs* receiving and considering my application, I submit to the authority of the *jurisdictions* and *SROs* and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the *jurisdictions* and *SROs* as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the *jurisdictions* and *SROs*, subject to right of appeal or review as provided by law.

3. I agree that neither the *jurisdictions* or *SROs* nor any person acting on their behalf shall be liable to me for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates of incorporation, by-laws or the rules and regulations of the *jurisdictions* and *SROs*.

4. I authorize the *jurisdictions*, *SROs*, and the *designated entity* to give any information they may have concerning me to any employer or prospective employer, any federal, state or municipal agency, or any other *SRO* and I release the *jurisdictions*, *SROs*, and the *designated entity*, and any person acting on their behalf from any and all liability of whatever nature by reason of furnishing such information.

5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*.

6. For the purpose of complying with the laws relating to the offer or sale of securities or commodities or investment advisory activities, I irrevocably appoint the administrator of each *jurisdiction* indicated in Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time, or such other person designated by law, and the successors in such office, my attorney upon whom may be served any notice, process, pleading, subpoena or other document in any action or *proceeding* against me arising out of or in connection with the offer or sale of securities or commodities, or investment advisory activities or out of the violation or alleged violation of the laws of such *jurisdictions*. I consent that any such action or *proceeding* against me may be commenced in any court of competent *jurisdiction* and proper venue by service of process upon the appointee as if I were a resident of, and had been lawfully served with process in the *jurisdiction*. I request that a copy of any notice, process, pleading, subpoena or other document served hereunder be mailed to my current residential address as reflected in this form or any amendment thereto.

7. I consent that the service of any process, pleading, subpoena, or other document in any *investigation* or administrative *proceeding* conducted by the SEC, CFTC or a *jurisdiction* or in any civil action in which the SEC, CFTC or a *jurisdiction* are plaintiffs, or the notice of any *investigation or proceeding* by any *SRO* against the *applicant*, may be made by personal service or by regular, registered or certified mail or confirmed telegram to me at my most recent business or home address as reflected in this Form U4, or any amendment thereto, by leaving such documents or notice at such address, or by any other legally permissible means. I further stipulate and agree that any civil action or administrative *proceeding* instituted by the SEC, CFTC or a *jurisdiction* may be commenced by the service of process as described herein, and that service of an administrative subpoena shall be effected by such service, and that service as aforesaid shall be taken and held in all courts and administrative tribunals to be valid and binding as if personal service thereof had been made.

8. I authorize all my employers and any other person to furnish to any *jurisdiction*, *SRO, designated entity*, employer, prospective employer, or any agent acting on its behalf, any information they have, including without limitation my creditworthiness, character, ability, business activities, educational background, general reputation, history of my employment and, in the case of former employers, complete reasons for my termination. Moreover, I release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U5). I recognize that I may be the subject of an investigative consumer report and waive any requirement of notification with respect to any investigative consumer report ordered by any *jurisdiction, SRO, designated entity*, employer, or prospective employer. I understand that I have the right to request complete and accurate disclosure by the *jurisdiction, SRO, designated entity*, employer or prospective employer of the nature and scope of the requested investigative consumer report.

9. I understand and certify that the representations in this form apply to all employers with whom I seek registration as indicated in Section 1 (GENERAL INFORMATION) or Section 6 (REGISTRATION REQUESTS WITH AFFILIATED FIRMS) of this form. I agree to update this form by causing an amendment to be filed on a timely basis whenever changes occur to answers previously reported. Further, I represent that, to the extent any information previously submitted is not amended, the information provided in this form is currently accurate and complete.

10. I authorize any employer or prospective employer to file electronically on my behalf any information required in this form or any amendment thereto; I certify that I have reviewed and approved the information to be submitted to any *jurisdiction* or *SRO* on this Form U4 Application; I agree that I will review and approve all disclosure information that will be filed electronically on my behalf; I further agree to waive any objection to the admissibility of the electronically filed records in any criminal, civil, or administrative *proceeding*.

*Applicant or applicant's* agent has typed *applicant's* name under this section to attest to the completeness and accuracy of this record. The *applicant* recognizes that this typed name constitutes, in every way, use or aspect, his or her legally binding signature.

Date (MM/DD/YYYY) 1/8/18

Signature of Applicant [signature]

Printed Name Kimberly JaJack

*FORMU4 15*